IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CR-213-D
No. 5:25-CV-806-D

| | | |
|---|---|---|
| THOMAS KENODRICK WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On November 17, 2025, Thomas Kenodrick Wilson ("Wilson" or "petitioner") moved pro se for "judicial intervention" to obtain case files from former counsel [D.E. 86]. On December 12, 2025, Wilson moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 120-month sentence [D.E. 87]. On March 26, 2026, the United States moved to dismiss Wilson's section 2255 motion [D.E. 97] and filed a memorandum in support [D.E. 98]. See Fed. R. Civ. P. 12(b)(6). On the same day, the court notified Wilson of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 99]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) On April 23, 2026, Wilson responded in opposition [D.E. 100]. On May 4, 2026, Wilson moved for leave to supplement his response and for in camera review of certain evidence [D.E. 101]. As explained below, the court grants the United States' motion to dismiss Wilson's section 2255 motion, dismisses Wilson's section 2255 motion, denies Wilson's motions for judicial intervention, leave to supplement his response brief, and in camera review, and denies a certificate of appealability.

I.

On April 16, 2021, a confidential source told investigators that Wilson "intended to travel Houston, Texas, in a semi-truck to transport a significant amount of cocaine, in addition to legitimate cargo," to Rocky Mount, North Carolina. Presentence Investigation Report ("PSR") [D.E. 59] ¶ 8. In the past, the confidential source successfully cooperated with the FBI in drug investigations. See [D.E. 22] 7; [D.E. 26] 1–2. The confidential source also told investigators that Wilson had sold the confidential source cocaine, and that Wilson contacted the confidential source using the cell phone number (252) 366-0062. See [D.E. 22] 7; [D.E. 26] 2. After receiving this information, Captain Kevin McLaughlin ("Captain McLaughlin") of the Nash County Sheriff's Office began investigating Wilson. McLaughlin discovered Wilson's extensive criminal background and that the phone number the confidential source provided appeared in other drug investigations. See [D.E. 22] 7; [D.E. 26] 2. And McLaughlin discovered that a public phone database connected the phone number to Wilson. See [D.E. 22] 8; [D.E. 26] 2.

On April 19, 2021, Captain McLaughlin sought and received authorization from North Carolina Superior Court Judge Quentin T. Sumner to collect historical and prospective cell site location information ("CSLI") for the number the confidential source provided. See [D.E. 22] 8; [D.E. 26] 3; [D.E. 22-1] [D.E. 22-2]. Captain McLaughlin used the authorization to track Wilson's location in real-time using a cell site simulator. See [D.E. 22] 8; [D.E. 26] 3. In the application Captain McLaughlin submitted to Superior Court Judge Sumner, Captain McLaughlin described the investigation into Wilson's drug-trafficking activities. See [D.E. 22-1] 2–3. Captain McLaughlin also requested that the order be sealed under N.C. Gen. Stat. § 15A-263(d)(1). See [D.E. 22-1] 7–8. Superior Court Judge Sumner granted the application and sealed the order. See [D.E. 22-2] 1–8.

Investigators used GPS data from Wilson's cell phone to monitor his location when he returned from Houston. See PSR ¶ 9. On April 24, 2021, officers stopped Wilson's truck after he failed to stop at a traffic light in Zebulon, North Carolina. See id. The officers searched Wilson's truck after a K-9 unit alerted to the presence of narcotics inside the truck and seized five kilograms of cocaine from the truck's cabin. See id. Wilson admitted that he sourced his cocaine from a man named Chino and that he had completed two other cocaine transactions with Chino. See id. ¶¶ 10–12.

On September 7, 2022, a grand jury in the Eastern District of North Carolina indicted Wilson for conspiring to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine (count one) and possession with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine and aiding and abetting (count two). See [D.E. 1] 1–2. On March 10, 2023, through retained counsel, Attorney Thomas C. Manning ("Attorney Manning"), Wilson moved to suppress evidence recovered from an order authorizing the collection of historical and prospective cell site location information ("CSLI") phone records for a phone number linked to Wilson. See [D.E. 22]. Wilson argued that the warrant was facially invalid and unconstitutional because the North Carolina Superior Court Judge who issued the warrant lacked authority to issue it and that probable cause did not support the order and the good faith exception and independent source doctrines did not apply. See id. at 14–30. On April 13, 2023, Attorney Manning met with Wilson in jail. See [D.E. 87-6] 2. Attorney Manning and Wilson discussed the motion to suppress, and Wilson told Attorney Manning that Wilson suspected the April 19, 2021 order was "doctored" to mislead the Superior Court Judge. See [D.E. 87-6] 2.

On April 17, 2023, the United States responded in opposition to the motion to suppress. See [D.E. 26]. On April 28, 2023, Attorney Manning traveled to Nashville, North Carolina to seek a copy of the April 19, 2021 order. See [D.E. 87-6] 2. On May 2, 2023, Attorney Manning spoke to a Senior Resident Superior Court Judge who confirmed to Attorney Manning that "intercept warrants [are] not archived" by the court clerk and no record of the warrant is kept except in the agents' possession. Id. The same day, Attorney Manning discussed "suppression hearing issues" with the Assistant United States Attorneys working Wilson's case and a potential plea offer. Id. On May 18, 2023, the United States communicated a plea offer to Attorney Manning. See id. On June 16, 2023, Attorney Manning sent Wilson a letter. See [D.E. 100-4] 1–2. Attorney Manning informed Wilson that Attorney Manning sent the subpoena for Wilson's phone records. See id. at 1. Attorney Manning also informed Wilson that the government disclosed to the defense a copy of a search warrant "signed the same day as the other one" which "sought location data for the phone [Wilson's] girlfriend had in her name and which [Wilson] used, thinking that the cops didn't know about it." Id. That data showed Wilson's location and phone call data "all the time" he traveled "to Houston and back." Id. Attorney Manning surmised to Wilson that "[i]t appears to us that you had a 'leak' in your planning which revealed the 'secret' phone number and then the cops figured out that your girlfriend owned the account and they were monitoring that phone for numbers to and from it for a while before you left out on the trip to Houston." Id. at 2.

On June 26, 2023, Wilson emailed Attorney Manning and instructed Attorney Manning not to add or remove "any words" from the March 10, 2023 suppression motion, to subpoena AT&T to "put them on notice that [Wilson] will need them to come to court to testify on [Wilson's] behalf," and to subpoena "TFO Agent Aycock [because Wilson] will need him to come to court to

explain why he was kicked off of the force and why wasn't [sic] his name mentioned in [Wilson's] indictment." [D.E. 87-4] 1.

On July 14, 2023, Wilson replied in support of the suppression motion. See [D.E. 36]. On August 30, 2023, Wilson pleaded not guilty to counts one and two. See [D.E. 42].

On October 10, 2023, the court denied Wilson's motion to suppress. See [D.E. 43, 44, 55]. In its oral ruling, the court found that the North Carolina Superior Court Judge had authority under North Carolina and federal law to order the collection of historical and prospective CSLI, and that probable cause supported the North Carolina Superior Court Judge's order. See [D.E. 55] 2–8. Alternatively, the court held that even if the court found the warrant invalid, the good-faith exception applied and defeated Wilson's arguments. See id. at 8–10.

On March 6, 2024, Wilson moved to appoint new counsel. See [D.E. 46]. On March 7, 2024, Wilson's counsel moved to withdraw. See [D.E. 47]; cf. [D.E. 87-10] 1. On March 13, 2024, the court granted the motion to withdraw. See [D.E. 48]. On March 15, 2024, new counsel entered a notice of appearance on Wilson's behalf. See [D.E. 49].

On May 23, 2024, with a written plea agreement, Wilson changed his plea and pleaded guilty to counts one and two. See [D.E. 52, 53, 54, 77]. On September 13, 2024, the court held Wilson's sentencing hearing. See [D.E. 66, 78]. The court adopted the facts as set forth in the PSR. See PSR; [D.E. 68] 1; Sent'g Tr. [D.E. 78] 4. The court calculated Wilson's total offense level to be 27, his criminal history category to be III, and the advisory guideline range to 120 months' concurrent imprisonment. See PSR ¶¶ 62–73, 75; Sent'g Tr. 5; [D.E. 68] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Wilson to 120 months' concurrent imprisonment on counts one and two. See Sent. Tr. 5–16; [D.E. 67] 3.

On September 26, 2024, Wilson appealed. See [D.E. 69]. On May 27, 2025, the United States Court of Appeals for the Fourth Circuit found that Wilson's guilty plea was valid, that Wilson knowingly and intelligently entered the appellate waiver in his plea agreement, enforced the appellate waiver, affirmed the court's judgment on any issue not encompassed in the appellate waiver, and dismissed the appeal on any issues covered by the waiver. See United States v. Wilson, No. 24-4523, 2025 WL 1502093, at *1–2 (4th Cir. May 27, 2025) (per curiam) (unpublished); [D.E. 82].

On November 17, 2025, Wilson moved for judicial intervention. See [D.E. 86]. On December 12, 2025, Wilson moved to vacate, set aside, or correct his 120-month sentence. See [D.E. 87]. On March 26, 2026, the United States moved to dismiss Wilson's section 2255 motion. See [D.E. 97, 98]. On April 23, 2026, Wilson responded in opposition. See [D.E. 100]. On May 4, 2026, Wilson moved for leave to supplement his response brief and requested that the court review certain evidence in camera. See [D.E. 101].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court

may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Wilson must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up).

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside

guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

In his section 2255 motion, Wilson argues that his counsel rendered ineffective assistance of counsel "for abandoning claims at his motion to suppress hearing." [D.E. 87] 4.[1] Specifically, Wilson states that he directed counsel to (1) subpoena AT&T for records related to the tracking order, (2) subpoena an FBI Task Force Officer named Tim Aycock about Aycock's alleged misconduct, (3) challenge the validity of the April 19, 2021 order, (4) raise that tracking began before any authorization, and (5) file appropriate motions (including a motion to dismiss the indictment). See [D.E. 87-3] 1–3; [D.E. 87-11] 1; cf. [D.E. 87-4] 1; [D.E. 100-6] 1.

The court rejects Wilson's arguments. Attorney Manning filed a comprehensive suppression motion and reply raising the issues counsel considered the most meritorious. See [D.E. 22]; [D.E. 26]. As for Wilson's first instruction, counsel did subpoena Wilson's phone records. See [D.E. 100-4] 1. As for Wilson's second instruction about TFO Aycock, TFO Aycock did not apply for the warrant in Wilson's case. Captain McLaughlin did. See [D.E. 22-1]. Wilson does not plausibly allege how TFO Aycock's alleged misconduct is relevant to Wilson's case. As for Wilson's third, fourth, and fifth instructions, Attorney Manning filed a motion to suppress the April 19, 2021 order, replied to the United States' opposition, and ably represented Wilson at the hearing. See [D.E. 22]. Attorney Manning filed appropriate motions and lacked a colorable basis for moving to dismiss the indictment. Moreover, Wilson does not plausibly allege that investigators began tracking Wilson's location using the CSLI before obtaining the April 19, 2021

---

[1] Wilson's motion and supporting materials do not contain any issue which Wilson's counsel abandoned. Therefore, the court interprets Wilson's motion to allege ineffective assistance of counsel for failing to follow Wilson's directions. See [D.E. 87-3] 1–3; [D.E. 87-11] 1.

order. Instead, the message Attorney Manning sent Wilson reflects investigators using phone records obtained from providers before obtaining the April 19, 2021 order to track Wilson's location. See [D.E. 100-4] 1–2. Thus, Wilson cannot demonstrate ineffective assistance of counsel about any of Wilson's directives. See Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) (counsel need not raise every non-frivolous argument, much less baseless arguments); United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); United States v. Ludwig, 162 F.3d 456, 459 (6th Cir. 1998); Guarascio v. United States, 996 F. Supp. 2d 406, 412 (E.D.N.C. 2014).

Attorney Manning had no obligation to follow Wilson's directives about the subpoenas to serve, the witnesses to call, the pretrial motions to file, the issues to raise in the suppression motion, and whether to file a motion to dismiss the indictment. "A criminal defense attorney is obligated to follow his client's wishes only with regard to the fundamental issues that must be personally decided by the client." United States v. Chapman, 593 F.3d 365, 369 (4th Cir. 2010). The decisions on which the defendant retains "the ultimate authority" are "whether to plead guilty, waive a jury, testify in his or her own behalf, . . . take an appeal," to be present at the trial, and to represent himself. Jones v. Barnes, 463 U.S. 745, 751 (1983); see Florida v. Nixon, 543 U.S. 175, 187 (2004); Wainwright v. Sykes, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring); Chapman, 593 F.3d at 368 (collecting cases). Where the "decision is a tactical one left to the sound judgment of counsel," Chapman, 593 F.3d at 369, the defendant "cedes the power to make binding decisions of trial strategy." United States v. Roof, 10 F.4th 314, 352 (4th Cir. 2021) (cleaned up); see Faretta v. California, 422 U.S. 806, 812–18 (1975); United States v. Laffitte, 121 F.4th 472, 488 (4th Cir.

2024). The defense attorney "has the authority to manage most aspects of the defense without first obtaining the consent of the defendant," including decisions such as which pretrial motions to file and the issues to raise in those motions. Chapman, 593 F.3d at 367; see Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) ("The decision whether to file a pre-trial motion to suppress . . . is a classic tactical decision."). Wilson's directives pertained to tactical decisions and did not bind Attorney Manning. See, e.g., Roof, 10 F.4th at 353; Chapman, 593 F.3d at 367–70; Laffitte, 121 F.4th at 488. The record demonstrates that Attorney Manning provided Wilson with frank advice and ably represented Wilson. Thus, the court rejects Wilson's ineffective assistance of counsel claim.

Wilson also argues that the court abused its discretion by denying the motion to suppress, ignoring his alleged involuntary guilty plea, and failing to apply "the fruit of the poisonous tree doctrine." [D.E. 87] 4. The Fourth Circuit rejected these arguments. See Wilson, 2025 WL 1502093, at *1–2. Wilson cannot relitigate claims that he lost on direct appeal through his section 2255 motion. See Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026); Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Furthermore, the appellate waiver in Wilson's plea agreement bars these claims. See [D.E. 53] ¶ 2c; Wilson, 2025 WL 1502093, at *1. Thus, the court dismisses Wilson's section 2255 motion.

As for Wilson's motion to supplement and for in camera review, Wilson argues that he "only recognized the legal significance" of information about TFO Aycock's alleged misconduct after responding to the United States' motion to dismiss. [D.E. 101] 1. Wilson asks the court to

review in camera "any and all" information related to the alleged misconduct, and to order disclosure of material evidence favorable to the defense. Id. at 2.

The court denies Wilson's request. Wilson pleaded guilty and admitted his guilt under oath during a properly conducted Rule 11 hearing. See [D.E. 77] 2–30; Wilson, 2025 WL 1502093, at *1. Wilson was not entitled to receive this information about TFO Aycock before pleading guilty. See United States v. Ruiz, 536 U.S. 622, 629 (2002) (holding that the Constitution does not require "preguilty plea disclosure of impeachment information"); United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010) ("The Brady[v. Maryland] right, however, is a trial right."). Moreover, Wilson's sworn admission to committing the crimes charged in counts one and two during the Rule 11 hearing "almost completely eliminate[s]" the concerns underlying the pretrial disclosure of impeachment information. Moussaoui, 591 F.3d at 285; see Ruiz, 536 U.S. at 628. The factual basis of Wilson's guilty plea and the knowing and voluntary nature of his guilty plea to those crimes then completely eliminate the concerns underlying the pretrial disclosure of impeachment information, particularly given that Wilson and Attorney Manning knew this information before Wilson pleaded guilty. See [D.E. 87-4] 1; [D.E. 87-6] 2. Thus, the court denies Wilson's motion to supplement and for in camera review.

As for Wilson's motion for judicial intervention, Wilson's section 2255 motion does not plausibly state a claim, and the materials that Wilson submitted with his motion demonstrate that he has access to certain files from Attorney Manning. See, e.g., [D.E. 87-6]. Thus, the court denies Wilson's motion for judicial intervention.

After reviewing the claims presented in Wilson's section 2255 motion, the court finds that reasonable jurists would not find the treatment of Wilson's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a

certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 97], DISMISSES petitioner's section 2255 motion [D.E. 87], DENIES petitioner's motions for judicial intervention [D.E. 86] and for leave to supplement and in camera review [D.E. 101] and DENIES a certificate of appealability.

SO ORDERED. This 3 day of August, 2026.

JAMES C. DEVER III
United States District Judge